**Kyle E. Yaege, Esq. (SB # 246918)**
**LAW OFFICES OF KYLE YAEGE, A.P.C.**
**4542 Ruffner Street, Suite 150**
**San Diego, California 92111**
**TEL: (619) 238-9200**
**FAX: (619) 238-9201**

Attorney for Plaintiff
CURTIS MOORE, an individual

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

CURTIS MOORE, an individual

Plaintiff,

v.

INX, Inc., a Delaware corporation, RAYMOND E. MAYBUS, Secretary, Department of the Navy, and DOES 1-10, inclusive.

Defendant.

**Case No.** 11cv1108-AJB (MDD)

**SECOND AMENDED COMPLAINT FOR DAMAGES BASED ON:**

1. BREACH OF CONTRACT
2. FAILURE TO PAY ALL WAGES DUE UPON TERMINATION (“WAITING TIME”) (Cal. Labor Code § 203 ).
3. RETALIATION IN VIOLATION OF FEHA (Cal. Govt. Code § 12940)
4. RETALIATION IN VIOLATION OF TITLE VII (42 USC §2000e-3(a))
5. WRONGFUL TERMINATION (*Tameny v. Atlantic Richfield)*

COMES NOW THE PLAINTIFF, alleging against Defendants as follows:

**SUMMARY OF ACTION**

1. This is an action by an individual, CURTIS MOORE (“Mr. Moore” or “Plaintiff”), against his former employer, INX, INC. (“INX” or “Defendant INX”), for breach of contract, failure to pay all wages due upon termination, retaliation in violation of FEHA,

Retaliation in violation of Title VII, and wrongful termination, and against his co-employer, RAYMOND E. MAYBUS, Secretary, Department of Navy ("Defendant Navy"), for Retaliation in violation of Title VII.

**PARTIES**

2. Plaintiff is, and at all times herein mentioned was, a resident of the County of San Diego in the State of California.

3. Plaintiff is informed and believes and thereon alleges that at all times herein mentioned, Defendant, INX, INC., is and at all times herein, is a Delaware corporation, authorized to do business in the State of California, with its principal executive office in the City of Houston, State of Texas. Plaintiff is informed and believes and thereon alleges that at all times referenced herein, that INX employed more than five (5) employees in the State of California.

4. Plaintiff is informed, believes and thereon alleges that Defendant RAYMOND E. MABUS, SECRETARY, DEPARTMENT OF THE NAVY is the current Secretary of the Department of the Navy ("Defendant Navy" or, collectively, "Defendants"), which is, and all times relevant herein was, a public entity established by the Executive Branch of the United States Government.

5. At all times referenced herein, Defendants INX, INC. and the United States Department of the Navy, were co-employers of Plaintiff with each possessing the power to direct Plaintiff's work, control Plaintiff's working conditions, hire, fire, and/or discipline Plaintiff.

6. Plaintiff is unaware of the true names and capacities of Defendants sued herein under *California Code of Civil Procedure §474* as DOES 1 through 10, inclusive, and Plaintiff therefore sue these Defendants by such fictitious names. Plaintiff will seek leave of Court to amend this complaint and all subsequent proceedings herein to the true names and capacities of such Defendants. Each of the fictitiously named Defendants is responsible in some manner for the conduct alleged herein and for the injuries suffered by the Plaintiff.

7. From this point on, the term "Defendant" or "Defendants" shall mean to refer to all named Defendants, and to each of them.

8. Plaintiff is informed and believes and thereon alleges that at all relevant times herein, all Defendants, were the agents, employees and/or servants, masters or employers of the remaining Defendants, and in doing the things hereinafter alleged, were acting within the course and scope of such agency or employment, and with the approval and ratification of each of the other Defendants.

9. Plaintiff is informed and believes and thereon alleges that each and every of the acts and omissions alleged herein were performed by, and/or attributable to, all Defendants, each acting as agents and/or employees, and/or under the direction and control of each of the other Defendants, and that these acts and failures to act were within the course and scope of this agency, employment and/or direction and control.

**JURISDICTION, AND VENUE**

10. This Court has jurisdiction over all causes of action asserted herein as the agreements upon which this action is based were all executed and entered into in whole or in part in San Diego County.

**EXHAUSTION OF ADMINISTRATIVE REMEDIES**

11. A true and correct copy of the California Department of Fair Employment and Housing Right to Sue Letter regarding Mr. Moore's claims against INX, Inc. is attached hereto as "Exhibit B."

12. A true and correct copy of the Equal Employment Opportunity Commission ("EEOC") Right to Sue Letter regarding Mr. Moore's claims against INX, Inc. is attached hereto as "Exhibit C."

13. A true and correct copy of the US Marine Corps Right to Sue Letter / Notice of Dismissal of Title VII claim regarding Mr. Moore's claims against the United States Marine Corps is attached hereto as "Exhibit D."

14. Plaintiff has exhausted all administrative remedies before the filing of this Complaint.

/ / /

**FACTUAL ALLEGATIONS**

15. On or about July 27, 2010, by means of written communication, Defendant, INX, represented to Mr. Moore that Defendants would employ him, on the following terms:

   a. $10,416.67 semi-monthly salary;

   b. Signing bonus of $10,000.00

   c. "Dislocation Allowance" equal to 25% of total compensation in addition to base salary.

   d. "Danger Pay" equal to 75% of total compensation in addition to base salary.

   e. Position of “Consultant” reporting to Manager, Federal Engineering;

   f. Term: Initial contract period from August 2, 2010 to November 6, 2010, with employers’ option to renew the contract from November 7, 2010 to November 6, 2011.

16. Mr. Moore agreed to these terms which were reduced to writing and signed by the parties on or about July 27, 2010.

   a. Attached hereto as Exhibit “A” is Defendant INX’s offer of employment, including the Consultant Compensation Plan for Plaintiff, Curtis Moore.

17. Mr. Moore was hired by INX on August 3, 2010.

18. On or about September 18, 2010, Mr. Moore arrived in Afghanistan and began working at the Information Management Office in the IMEF compound of Camp Leatherneck, Afghanistan.

19. In this location the United States Marine Corps. (USMC) undertook the role of co-employer of Mr. Moore.

20. While in Afghanistan, Mr. Moore worked in an area controlled exclusively by the USMC, using equipment provided by the USMC, was directly supervised by USMC officers, including Maj. James Robinson, was assigned work by USMC personnel, and was required to answer to USMC personnel regarding his job performance, work schedule, and various other elements of his daily work.

21. On information and belief, Mr. Moore hiring was approved by USMC personnel, and Mr. Moore's termination was expressly directed by a USMC officer.

22. Within less than a week of Mr. Moore's arrival, he observed open display and viewing of pornography in the office, by various individuals including Plaintiff's USMC supervisor, Maj. James Robinson.

23. Based on Plaintiff's training as a military officer, the written policies of INX, Inc., and other prior private sector employers, Mr. Moore, believed that open viewing of pornography in the workplace was unlawful, was a violation of company policy, and created a work environment that was hostile toward female employees.

24. On or about September 22, 2010, Mr. Moore brought the open viewing of pornography in the workplace to the attention of his co-worker, Christopher Beasley.

25. In October 2010, Mr. Moore began to notice that there was an increasing volume of pornography that was being displayed around the office.

26. These displays made Mr. Moore uncomfortable, and he felt that the female employees that entered the office were also made to feel uncomfortable by the open display of pornography in the workplace.

27. In October 2010, Mr. Moore brought his concerns about the open viewing of pornography in the office, and the resulting hostile work environment with his direct supervisor at INX, Inc., Federal Services Manager, Steve Jones.

28. A month later, in November 2010, when Plaintiff had seen nothing done to address the open viewing of pornography, Plaintiff again advised Steve Jones of his continued observation of pornography in the work areas.

29. On or about November 7, 2010, after Mr. Moore's successful performance in Afghanistan through the initial term of the contract, the Defendants exercised their option to extend Mr. Moore's contract from November 7, 2010 to November 6, 2011 as provided in the contract, and took numerous actions to ensure his clearance to remain at Camp Leatherneck for the extended one year period.

30. On or about November 9, 2010, Plaintiff emailed Steve Jones reiterating his concerns about the viewing of pornography in the workplace.

31. Mr. Moore took approved leave from his work December 3, 2010 to December 20, 2010.

32. During Mr. Moore's leave, he continued to contact Steve Jones telephonically, on December 12, 17, and 18, 2010, to discuss multiple work issues. During these conversations, he reminded Steve Jones of the unresolved problem with open viewing of pornography in the workplace.

33. Upon his return from leave, Mr. Moore took note that employees were continuing to openly view pornography in the office.

34. Having seen no action by Defendants in response to his prior complaints, in mid-January 2011, Mr. Moore advised INX, the U.S. Marine Corp., and Inspector General ("IG") that other employees were regularly and openly viewing pornography in the workplace, creating what he believed was a hostile work environment for himself and for other employees.

35. Thereafter, Mr. Moore filed an Inspector General complaint.

36. Ultimately, the Inspector General found that Mr. Moore's complaints were partially founded, and corrective action was allegedly taken by the inspector general to remedy the situation.

   a. Attached hereto as "Exhibit E" is a true and correct copy of Plaintiff's complaint to the inspector general, and the inspector general's conclusion.

37. On January 15, 2011, after seeing no action to remedy the situation by reporting the problem up the chain of command, Mr. Moore filed a complaint with Naval Criminal Investigative Service ("NCIS").

38. On January 20, 2011 at 11am PST, Mr. Moore participated in telephonic meeting with INX Human Resources to address threats made by his co-worker, Chris Wingate, to punch him in the face.

39. The telephonic meeting took place between Deborah Simpson of INX Human Resources, Mr. Moore's supervisor, Steve Jones, and Mr. Moore.

40. Rather than discussing Chris Wingate's threats to punch Mr. Moore in the face, the meeting centered on Mr. Moore's complaints about the open viewing of pornography in the workplace.

41. Deborah Simpson stated during this conversation, "You are being paid ten (10) times the normal rate, you should just deal with it."

42. On January 31, 2011, without warning or statement of cause, INX terminated Plaintiff.

43. Thereafter, in its Rule 26 disclosure in this case, INX indicated that Plaintiff's termination was directed by the USMC, namely Maj. James Robinson.

44. Plaintiff has been harmed as a result of his termination, including but not limited to, loss of salary, vacation pay, holiday pay, and health benefits under the contract.

45. More importantly, Defendants' wrongful termination and involuntary removal of Plaintiff from this assignment has effectively barred him from future employment in the small but lucrative defense contracting information technology field. Mr. Moore is informed and believes that as a result of his involuntary removal, he will be permanently prevented from obtaining similar future assignments for the rest of his professional career.

46. Throughout his term in Afghanistan, from September 18, 2010 to January 31, 2011, Mr. Moore was only paid his "base salary" of $10,416.67 semi-monthly, and his signing bonus of $10,000.

47. As of the date of this complaint, and despite demands for payment to Defendants, Mr. Moore has not been paid the promised Dislocation Allowance, or Danger Pay, even for the period that Defendants acknowledged that he worked.

**FIRST CAUSE OF ACTION**

**(Breach of Employment Contract)**

**(As to Defendant INX, Inc. and all DOE Defendants)**

48. Plaintiff hereby realleges and incorporates by reference each and every allegation contained in all of the preceding paragraphs.

49. On or about July 27, 2010, by means of written communication, Defendant, INX, represented to Mr. Moore that Defendants would employ him, on the following terms:

a. $10,416.67 semi-monthly salary;

b. Signing bonus of $10,000.00

c. "Dislocation Allowance" equal to 25% of total compensation in addition to base salary.

d. "Danger Pay" equal to 75% of total compensation in addition to base salary.

e. Position of “Consultant” reporting to Manager, Federal Engineering;

f. Term: Initial contract period from August 2, 2010 to November 6, 2010, with employers’ option to renew the contract from November 7, 2010 to November 6, 2011.

50. Mr. Moore agreed to these terms which were reduced to writing and signed by the parties on or about July 27, 2010.

a. Attached hereto as Exhibit “A” is Defendants’ offer of employment, including the Consultant Compensation Plan for Curtis Moore.

51. By virtue of the express term of employment included in the contract, Mr. Moore’s employment could only be terminated for (1) willful breach of duty, (2) habitual neglect of duty, or (3) continued incapacity to perform his or her duty. *Lab. Code* § 2924, *Khajavi v. Feather River Anesthesia Med. Group.* (2000) 84 Cal. App. 4th 32, 57-59.

52. Mr. Moore performed as required in his employment offer, by relocating to Afghanistan on or about September 18, 2010, and began working at the Information Management Office in the MEF compound of Camp Leatherneck Afghanistan.

53. On or about November 7, 2010, after Mr. Moore’s successful performance in Afghanistan through the initial term of the contract, the Defendants exercised their option to extend Mr. Moore’s contract from November 7, 2010 to November 6, 2011 as provided in the contract, and in furtherance of this extension period, Defendants took numerous actions to ensure Mr. Moore clearance to remain at Camp Leatherneck for the entire one year period.

54. Defendants suddenly and summarily terminated Mr. Moore without cause or justification, in breach of the contract, on January 31, 2011.

55. At all times relevant herein, until he was terminated by Defendants, Mr. Moore fully performed to his obligation under the contract.

56. Throughout his term in Afghanistan, from September 18, 2010 to January 31, 2011, Mr. Moore was only paid his "base salary" of $10,416.67 semi-monthly, and his signing bonus of $10,000.

57. As of the date of this complaint, and despite demands for payment to Defendants, Mr. Moore has not been paid the promised Dislocation Allowance, or Danger Pay for the period that Defendants did allow him to work in Afghanistan.

58. Defendants have breached their contract with Mr. Moore both by failing to pay the promised Danger Pay and Dislocation Allowance for the time he was permitted to work, and also by terminating Mr. Moore's employment without cause or justification in violation of the express provisions of the contract.

59. As a direct and proximate cause of the acts of the Defendants in breach of the contract, Plaintiff has suffered damages including *inter alia* unpaid salary, unpaid vacation/holiday pay, plus benefits to be continued through November 6, 2011.

**SECOND CAUSE OF ACTION**

**(Failure To Pay All Wages Due Upon Termination)**

**(Cal. Labor Code § 203)**

**(As to Defendant INX, Inc. and all DOE Defendants)**

60. Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs

61. California Labor Code §201 requires an employer who discharges an employee to pay compensation due and owing to said employee immediately upon discharge. California Labor Code §203 provides that if an employer willfully fails to pay compensation in accordance with California Labor Code §201 or §202, said employer is liable to said employee for waiting time penalties.

62. On or about July 27, 2010, by means of written communication, Defendant, INX, represented to Mr. Moore that Defendants would employ him, including terms requiring

Defendants to pay "Dislocation Allowance" equal to 25% of total compensation in addition to base salary, and "Danger Pay" equal to 75% of total compensation in addition to base salary.

63. Mr. Moore agreed to these terms which were reduced to writing and signed by the parties on or about July 27, 2010.

a. Attached hereto as Exhibit "A" is Defendants' offer of employment, including the Consultant Compensation Plan for Curtis Moore.

64. Mr. Moore performed as required in his employment offer, by relocating to Afghanistan on or about September 18, 2010, and began working at the Information Management Office in the MEF compound of Camp Leatherneck Afghanistan.

65. Apart from an approved absence from December 3, 2010 to December 20, 2010, Mr. Moore continued to work in Afghanistan for Defendants until he was suddenly and summarily terminated without cause or justification on January 31, 2011.

66. Throughout his term in Afghanistan, from September 18, 2010 to January 31, 2011, Mr. Moore was only paid his "base salary" of $10,416.67 semi-monthly, and his signing bonus of $10,000.

67. As of the date of this complaint, and despite demands for payment to Defendants, Mr. Moore has not been paid the promised Dislocation Allowance, or Danger Pay.

68. Mr. Moore is informed and believes that Defendants' failure and refusal to pay all compensation and wages due to him is willful.

69. In addition to the other damages sought by Mr. Moore through this action, Mr. Moore requests the award of his unpaid wages and penalties pursuant to California Labor Code §203 subject to proof at trial.

70. Furthermore, Plaintiff requests the award of attorney's fees and costs pursuant to *Labor Code* § 218.5, and the award of interest from the date the wages should have been paid pursuant to *Labor Code* § 218.6.

/ / /

/ / /

**THIRD CAUSE OF ACTION**

**(Retaliation In Violation of Fair Employment and Housing Act)**

**(Cal. Govt. Code § 12940 *et. seq.*)**

**(As to Defendant INX, Inc. and all DOE Defendants)**

71. Plaintiff hereby realleges and incorporates by reference each and every allegation contained in the preceding paragraphs.

72. At all times mentioned herein, California Government Code section 12940 *et. seq.* commonly referred to as the California Fair Employment and Housing Act ("FEHA") was in full force and effect, and was binding on each of the Defendants.

73. A true and correct copy of California Department of Fair Employment and Housing and Equal Employment Opportunity Commission ("EEOC") Right to Sue letters are attached hereto as "Exhibit B."

74. California Government code § 12940(h) prohibits retaliation against individuals engaged in protected conduct, which includes complaints of a hostile work environment.

75. Furthermore, it is longstanding and established California law, that an employee is protected against retaliation under FEHA if the employee reasonably and in good faith believes that what he or she was opposing constituted unlawful employer conduct such as sexual harassment or sexual discrimination. *Miller v. Dept. of Corrections* (2005), 36 Cal. 4th 446, 473-474. *Yanowitz v. L'Oreal USA, Inc.*, (2005) 36 Cal. 4th 1028, 1043.

76. Beginning in October of 2010, Mr. Moore engaged in a protected conduct by reporting his co-workers regular and open viewing of pornography in the workplace, which he understood to be illegal, and which he believed created a hostile work environment for other employees. As time passed, and Defendants failed to take action to stop the open viewing pornography in the workplace, Mr. Moore became more vocal about his concern, including complaints to his direct supervisor starting in November of 2010, complaints to INX's Human Resources Department, the US Marine Corps, and the inspector general starting in January 2011, and complaints to NCIS, in mid-January 2011.

77. Mr. Moore was the subject of adverse employment action by Defendants, when he was involuntarily terminated without cause or justification, on January 31, 2011 (less than a month after complaining to INX's HR, the US Marine Corps, and the Inspector General, and slightly more than one week after he filed a complaint with NCIS regarding the hostile work environment.)

78. On information and belief, Mr. Moore's complaints were a motivating factor in the Defendants' decision to take adverse employment action against him.

79. As a result of Defendants' willful, knowing, and intentional retaliation against Plaintiff for engaging in actions protected under the Fair Employment and Housing Act, Plaintiff has sustained various damages, both economic and non-economic, including *inter alia* loss of earnings, loss of benefits, and emotional distress, all subject to proof at trial.

80. Defendants' actions alleged herein, and in violation of Govt. Code § 12940, were oppressive, malicious, and/or fraudulent as defined in *Civil Code* § 3294. Accordingly, Plaintiff also requests the award of punitive damages in an amount sufficient to deter Defendants from engaging in similar future behavior, according to proof at trial.

**FOURTH CAUSE OF ACTION**

**(Retaliation In Violation of Title VII)**

**(42 USC §2000e-3(a))**

**(As to all Defendants)**

81. Plaintiff hereby realleges and incorporates by reference each and every allegation contained in the preceding paragraphs. Plaintiff's incorporation of the above allegations is not intended to assert, and shall not serve to assert, any of the above causes of action against Defendant Raymond E. Maybus, Secretary of the Department of the Navy.

82. At all times mentioned herein, 42 USC §2000e-3(a) was in full force and effect, and was binding on each of the Defendants.

83. A true and correct copy of California Department of Fair Employment and Housing and Equal Employment Opportunity Commission ("EEOC") Right to Sue letters are attached hereto as "Exhibit B."

84. 42 USC §2000e-3(a) prohibits retaliation against individuals engaged in protected conduct by making a charge or participating in any manner in an investigation, proceeding, or hearing, which includes filing complaints of a hostile work environment.

85. Furthermore, it is longstanding and established federal law, that an employee is protected against retaliation under Title VII if the employee reasonably and in good faith believes that what he or she was opposing constituted unlawful employer conduct such as sexual harassment or sexual discrimination. *Passantino v. Johnson & Johnson Consumer Products, Inc.* (9th Cir. 2000) 212 F. 3d 493, 506-507, *Trent v. Valley Elec. Ass'n Inc.* (9th Cir. 1994) 41 F. 3d 524, 526.

86. Mr. Moore was an employee of both INX, Inc. and the USMC while working at Camp Leatherneck Afghanistan, with IMEF (Fwd.), with each entity acting as a co-employer.

87. Beginning in October of 2010, Mr. Moore engaged in a protected conduct by reporting his co-workers regular and open viewing of pornography in the workplace, which he understood to be illegal, and which he believed created a hostile work environment for other employees. As time passed, and Defendants failed to take action to stop the open viewing pornography in the workplace, Mr. Moore became more vocal about his concern, including complaints to his direct supervisor starting in November of 2010, complaints to INX's Human Resources Department, the US Marine Corps, and the inspector general starting in January 2011, and complaints to NCIS, in mid-January 2011.

88. Mr. Moore was the subject of adverse employment action by Defendants, when he was involuntarily terminated, on January 31, 2011 (mere weeks after he filed a complaint with the Inspector General and NCIS regarding the hostile work environment).

89. On January 20, 2011 at 11am PST, Mr. Moore participated in telephonic meeting with INX Human Resources to address threats made by his co-worker, Chris Wingate, to punch him in the face. The telephonic meeting took place between Deborah Simpson of INX Human Resources, Mr. Moore's INX, Inc. supervisor, Steve Jones, and Mr. Moore. Rather than discussing Chris Wingate's threats to punch Mr. Moore in the face, the meeting centered on Mr. Moore's complaints about the open viewing of pornography in

the workplace. Deborah Simpson stated during this conversation, "You are being paid ten (10) times the normal rate, you should just deal with it."

90. In Defendant INX, Inc.'s Rule 26(a) initial disclosure in this action, it was revealed that Mr. Moore's termination was directed not by INX but by Maj. James Robinson.

91. On information and belief, including the facts above, Mr. Moore's complaints were a motivating factor in the Defendants' decision to take adverse employment action against him.

92. As a result of Defendants' willful, knowing, and intentional retaliation against Mr. Moore for engaging in actions protected under 42 USC §2000e-3(a), Plaintiff has sustained various damages, both economic and non-economic, including *inter alia* loss of earnings, loss of benefits, and emotional distress, all subject to proof at trial.

93. Defendants' actions alleged herein, and in violation of Title VII, were malicious and/or were conducted with reckless indifference as defined in 42 *USC* § 1981(a). Accordingly, Plaintiff also requests the award of punitive damages against all Defendants except for Defendant Raymond E. Maybus, Secretary of the Department of the Navy., in an amount sufficient to deter Defendants from engaging in similar future behavior, according to proof at trial.

**FIFTH CAUSE OF ACTION**

**(Wrongful Termination In Violation Of Public Policy)**

**(*Tameny v. Atlantic Richfield*)**

**(As to Defendant INX, Inc. and all DOE Defendants)**

94. Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs

95. This cause of action arises pursuant to the case of *Tameny v. Atlantic Richfield Co.* (1980) 27 Cal.3d 167 and its progeny.

96. California has established a substantial and fundamental public policy against harassment and discrimination on the basis of sex/gender in the workplace. This policy is partially reflected in statutory form in legislation including; *inter alia*, the Fair Employment and

Housing Act *Government Code § 12900 et.seq*. These policies are further supported by the case law interpreting these statutes.

97. Mr. Moore was involuntarily terminated on January 31, 2011 after three (3) months of reporting his co-worker's regular and open viewing of pornography in the workplace, (less than a month after complaining to INX's HR, the US Marine Corps, and the Inspector General, and slightly more than one week after he filed a complaint with NCIS regarding the hostile work environment.) which he understood to be illegal, and which he believed created a hostile work environment for other employees. As time passed, and Defendants failed to take action to stop the open viewing pornography in the workplace, Mr. Moore became more vocal about his concern, including complaints to his direct supervisor starting in November of 2010, complaints to INX's Human Resources Department, the US Marine Corps, and the inspector general starting in January 2011, and complaints to NCIS, in mid-January 2011.

98. On information and belief, Mr. Moore was terminated by Defendants because of his complaints to his supervisor, INX's HR manager, the US Marine Corps., the Inspector General's office, and NCIS, about what he believed was and unlawful hostile work environment created by the open and frequent viewing of pornography in the workplace.

99. As a result of Defendants' willful, knowing, and intentional termination of Mr. Moore in violation of public policy, he has sustained various damages both economic and non-economic, including *inter alia* loss of earnings, loss of benefits, and emotional distress, all subject to proof at trial.

100. Defendants' actions alleged herein, and in violation of Govt. Code § 12940, were oppressive, malicious, and/or fraudulent as defined in *Civil Code § 3294*. Accordingly, Plaintiff also requests the award of punitive damages in an amount sufficient to deter Defendants from engaging in similar future behavior, according to proof at trial.

**PRAYER FOR RELIEF**

WHEREFORE, PLAINTIFF prays for judgment against all Defendants jointly and severally, on all causes of action, as follows:

A. For general and compensatory damages in an amount according to proof, but in excess of $25,000;

B. For punitive damages in an amount necessary to make an example of an to punish each of the Defendants except for Defendant Raymond E. Maybus, Secretary of the Department of the Navy, and to deter those Defendants from engaging in future similar conduct;

C. For loss of earnings (both past and future) in an amount according to proof;

D. For interest at the legal rate in an amount according to proof;

E. For waiting time penalties pursuant to Cal. Labor Code § 208.

F. For costs of litigation, expert costs, and attorneys' fees as provided by per contract and/or statute including but not limited to, Cal. Labor Code § 2802, Cal. Labor Code § 218.6, 42 USC § 2000e-5(k), and Cal. Govt. Code § 12965(b).

G. For such other and further relief as the Court may deem just and appropriate.

Respectfully Submitted:

Law Offices Of Kyle E. Yaege, A.P.C.

Date: May 1, 2012

By: s/ Kyle E. Yaege, Esq.
Kyle E. Yaege, Esq.
Attorney for Plaintiff
CURTIS MOORE, an individual

# EXHIBIT A



July 27, 2010

Curtis Moore
5173 Waring Road Apt. 240
San Diego, CA 92120

Dear Curtis,

We are pleased to offer you the position of Consultant with INX Inc. starting July 30, 2010. Your compensation package is included with this letter.

INX adheres to a strict Drug, Inhalant, and Alcohol Abuse policy. This offer is contingent upon a negative result in the drug screening process conducted within 3 days of your start date (or if currently deployed Internationally, during your next period of Rest and Relaxation (R&R) in the US). A failure to do so will render this offer of employment void and unenforceable. Please review the attached agreements as you will be required to execute each prior to your first day of employment. This offer is contingent upon possessing a current Department of Defense clearance at the Secret or Top Secret level. Interim DoD clearance status is acceptable during the completion of a background investigation. You will also be required to provide the Company with legally acceptable proof of your identity and authorization to work in the United States within 3 days of your start date by providing a copy of your Social Security Card (Front and Back views).

To get the process moving, you simply need to call Employee Services at 469.464.1810 or send an e-mail to employeeservices@inxi.com to confirm the following information:

- *Your name exactly as it appears on your social security card*
- Your social security number
- Your birth date
- Your driver's license number
- Your preferred first name

This offer is valid for seven (7) days from the date of this letter. While it is very important to follow the instructions above to get the process moving, only the completion and return of all documents listed on the Required Documents Checklist constitutes acceptance of the offer. Please review, sign, and send the *documents enclosed as soon as possible to Payroll & Benefits. An overnight envelope has been provided* for your convenience. In the event that all enclosed paperwork is not received five or more business days prior to your start date your start date may be adjusted to a later date. .

I look forward to our combined success with you as a valued member of our team, and welcome to INX.

Sincerely,

Deborah Simpson
**Director of Employee Services**
**INX Inc.**



**Required Documents Checklist**

***Offer Package-***

_____1. **Compensation Plan – "Attachment A"** – review, sign & return.

_____2. **Confidentiality and Intellectual Property Agreement**- Initial every page, sign & return

_____3. **Drug Test** – Please follow enclosed instructions to find a convenient location and complete drug test not later than 5 business days prior to your start date. This offer is contingent upon a negative result in the drug screening process.

_____4. **Direct Deposit Form** – Complete and return. To sign up for Direct Deposit of expenses, fill out the Expense Reimbursement portion of this form and send a voided check.

_____5. **Photocopy of Drivers License** – send a copy of your Drivers' License

_____6. **Photocopy of Social Security** – send a copy of your Social Security Card for verification of W-2 information even if passport is used for I-9 ( The Application for a new Social Security Card is included if needed)

_____7. **W-4 form** – complete, sign & return

_____8. ***Code of Conduct*** – *Initial every page, sign & return.*

_____9. **Acceptable Use Policy** – Initial every page, sign & return

_____10. **Social Media Policy** – Initial every page, sign & return.

_____11. **Blogging Policy** – Initial every page, sign & return.

_____12. **Emergency Notification** – Fill out & return

_____13. **Voluntary Veteran Self ID** – This is strictly voluntary. If you choose to fill out, please return with the above paperwork.

***Signature on the following documents verifies you have located and reviewed the INX Inc. policies indicated which can be located in the INX Booklet behind the appropriate tab.***

_____ 14. **Written Drug Policy Acknowledgement** – sign & return

_____ 15. **Employee Handbook Acknowledgement** – sign & return

_____ 16. **Insider Trading Policy Acknowledgement** – sign & return

_____ 17. **Cisco Systems Product Resell Policy** – sign & return

*Did you work more than 40 hours in the 60 days immediately preceding your employment with INX? ☐Yes ☐ No

**Please use the enclosed overnight, pre-addressed package to return these documents to Payroll & Benefits Administrator at INX Inc. Please include this checklist. Thank you.**

***I-9***

**A copy of the I-9 is included in the packet. Please do not send with the above documents. Please bring the I-9 form with you on your first day along with the supporting documentation you choose to provide from the list of acceptable documents.**

***Benefits Information***

**You can find benefits information in the INX Booklet under Benefits Guide. You will receive e-mail notification to your INX e-mail address with enrollment instructions during your first week of employment. Please enroll using the online system within 48 hours of receiving enrollment instructions. Instructions will be included in the e-mail.**

**I have read and completed all paperwork checked above as required by INX.**

____________________________

Curtis Moore



**"Attachment A"**
**Consultant Compensation Plan** *(Rev 04/08)*

**Name: Curtis Moore**

**Title: Afghanistan Sharepoint Developer**

**Location: Federal - Afghanistan**

**Today's Date: 7/27/2010**

**Start Date: 7/30/2010**

**SharePoint Developer**

The SharePoint Developer is responsible for designing, modifying, developing, writing and implementing software programming applications. This position supports and/or installs software applications/operating systems. This position also participates in the testing process through test review and analysis, test witnessing and certification of software.

This position is based at Camp Leathemeck, Afghanistan. This position reports directly to Steve Jones, Manager, Federal Engineering.

This position includes a base salary, Danger Pay (approximately 75% of total compensation), and a Dislocation Allowance (approximately 25% of total compensation) based on successfully completing your specified period of performance in Afghanistan.

**Base Salary**

Your semi-monthly base salary will be **$10,416.67** payable in accordance with the Company's regular payroll practices. Normal paydays are the 1st and 15th of each month. All wages will be subject to statutory deductions and withholding.

**Signing Bonus**

You are eligible for a signing bonus of $10,000.00 to be paid out on the next regular payroll cycle following the date of execution this document. The signing bonus detailed above is contingent upon your continued employment with INX. If you voluntarily terminate your employment prior to 11/6/2010, you will refund to INX all signing bonus payments made from the date of execution of this document to the date of termination. If you are terminated for cause, no signing bonus will be paid. Cause would be established if an employee's behavior is not in accordance with the standards set forth in the INX Handbook.

**Training**

Due to the nature of the assignment and the limited access to professional training, training will be dealt with on a case-by-case basis. All formal training requests that occur during the period of performance in Iraq will be executed in conjunction with R&R and will not exceed the specified length of the normal R&R unless specifically and formally approved by the INX Project Manager or the Manager, Federal Engineering. All training expenses will be amortized at the rate of $1,000/month. Expenses that have not been fully amortized are to be reimbursed to the company upon voluntary departure.

**Additional Benefits**

- Medical Insurance (costs based on level of participation)
- 401K retirement program
- A one-time allowance, not to exceed $200.00 for the purchase of a Roshan mobile phone or Jackal IP phone and a $30.00 a monthly allowance for "minutes".
- A one-time allowance, not to exceed $125.00 for the purchase of an Internet Subscriber Unit and a $75.00 a monthly allowance for internet access.
- Access to an Afghanistan team vehicle on an "as required" basis and when approved by the INX PM/MC
- DBA Insurance provided at INX's expense.
- Pre-approved miscellaneous expense reimbursement (must be approved by the INX PM or the INX MC-EMEA prior to incurring the expense)

**Specified Period of Performance**

The specified period of performance in Afghanistan for this agreement is 02 August, 2010 to 06 November, 2010. If the MCTSS exercises Option Year One, ( 07 November, 2010 – 06 November, 2011,) of the existing Afghanistan Support Contract, this agreement may be modified/extended by mutual consent of the parties involved to add a new period of performance beginning on 07 November, 2010. The Dislocation Allowance is paid only when performing duties in Afghanistan, to include periods of approved training, deployments to other countries when required to execute your assigned duties and R&R.

**Requirements and Prerequisites**

There are certain requirements that both INX Inc. and specific governmental agencies have as prerequisites to employment.

INX Inc. maintains a strict Drug, Inhalant, and Alcohol Abuse policy. If you accept this offer you will be required to take a drug test. This offer is contingent upon a negative result in the drug screening process.

This offer is also contingent upon possessing a current Department of Defense clearance at the Secret or Top Secret level. Interim DoD clearance status is acceptable during the completion of a background investigation. You will also be required to provide the Company with legally acceptable proof of your identity and authorization to work in the United States within 3 days of your start date by providing a copy of your Social Security Card (Front and Back views).

INX Inc. is required by law to verify that you are authorized to work in the United States within three days of your start date. Your failure to submit the documents required to verify your eligibility to work in the United States will render this offer of employment void and unenforceable.

As a condition of employment you will be required to sign the attached employment agreement and confidentiality agreement.

**Plan Acknowledgment**

I acknowledge that I have read my Compensation Plan. I understand that it is my responsibility to read the Plan and that I should contact if I have questions or need help in understanding the contained information.

I understand the Plan may be changed at any time, with or without advance notice at the discretion of INX management.

I understand that this offer of employment is for a period not exceed 1 year.

I understand that continued employment upon return from Iraq is not guaranteed. Requests for employment upon successful completion of the work in Iraq will be addressed on a case-by-case basis if both parties agree and if there is an appropriate/acceptable INX position available.

I hereby confirm that I am not subject to any employment, confidentiality or other agreements or restrictive covenants that the performance of my duties for INX would put me in breach of and should I be party to any such agreement or restrictive covenant I have provided copies to INX Employee Services for review prior to this offer. I further agree that this offer and my employment with INX is contingent upon my ability to perform my duties for INX without breaching any other employment agreements I am subject to.

The Company is an at-will employer, which means that your employment with the Company is for no specific period of time and may be terminated by the Company or you at any time, with or without prior notice and with or without cause. This is the full and complete agreement between you and the Company with respect to this term of employment, and it supersedes any prior representations or agreement, whether written or oral, concerning your term of employment with the Company. The at-will nature of your employment may only be altered by written agreement signed by the Company's Chief Executive Officer.

This plan is valid for seven (7) days the date of this letter. The return of these documents with your signature constitutes acceptance of the offer. In the event that all enclosed paperwork is not received five or more business days prior to your start date your start date may be adjusted to a later date.

Acknowledgments: The undersigned has read and acknowledged receipt of this document.

| Name | Title | Salary |
|---|---|---|
| Curtis Moore | Afghanistan SharePoint Developer | $10,416.67 Semi-Monthly |

Employee Signature: ______________________ Date: ______________
Curtis Moore

INX Inc. Signature: Deborah Simpson Date: 7-27-10
Deborah Simpson
Director of Employee Services

*"Attachment A"*
*Page 2 of 2*

**CONFIDENTIALITY AND**

**INTELLECTUAL PROPERTY ASSIGNMENT AGREEMENT**

**FOR CALIFORNIA EMPLOYEES**

THIS AGREEMENT, (the "Agreement") is made and entered into as of 7/30/2010 by and between INX, Inc., a Delaware corporation (together with its parent and affiliated companies, the "Company"), and Curtis Moore of 5173 Waring Road Apt. 240 San Diego, CA ("Employee" and collectively, the "Parties").

WITNESSETH

THAT, WHEREAS, the Company is in the business of, among other things, designing, deploying, and supporting a range of advanced technology solutions relating to enterprise communication networks and data center infrastructure; and

WHEREAS, Employee has been, or will be, employed by the Company to render services to the Company and to make contributions to the success and growth of the Company; and

WHEREAS, the Company and the Employee mutually desire to enter into an agreement providing certain terms and conditions for Employee by the Company, all as more fully provided herein;

NOW, THEREFORE, in consideration of the promises set forth herein, Employee's employment and/or continued employment by the Company, which are good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, it is hereby agreed as follows:

1. **Loyalty Toward Company**

Employee will exert Employee's best efforts in the performance of Employee's duties as an employee of the Company and will remain loyal to the Company during the term of Employee's employment with the Company. Employee represents, warrants and agrees that Employee is not presently engaged in, nor shall Employee, during the term of Employee's employment with the Company, enter into any employment or agency relationship with any third party whose interests might conflict with those of the Company. Employee further represents, warrants and agrees that Employee does not presently, nor shall Employee, during the term of Employee's employment with the Company, possess any significant interest, directly or indirectly, including without limitation through Employee's family or through organizations or trusts controlled by Employee, in any third party whose interest might conflict with those of the Company.

2. **Confidentiality**

A. As used herein, the term "Confidential Information" shall mean any and all information, regardless of whether kept in a document, electronic storage medium, or in the Employee's memory, and includes, but not limited to, all data, compilations, programs, devices, strategies, concepts, ideas or methods concerning or related to:

1. the Company's financial condition, results of operations, and amounts of compensation paid to officers and employees;

2. marketing and sales programs of the Company and the terms and conditions of sales and offers of sales of products and/or services by the Company, and strategic plans;



*Employee Initials* *Company Representative*

3. the terms, conditions and current status of the Company's agreements and relationships with any customers, suppliers, or other entities;

4. the identities and business preferences of the Company's actual and prospective customers and suppliers or any employee or agent thereof with whom the Company communicates along with the Company's practices and procedures for identifying prospective customers;

5. the names and identities of any and all of Company's customers, including any and all customer lists or similar compilations;

6. the know-how, manufacturing processes and techniques, regulatory approval strategies, computer programs, data, schematics, design work, formulae, and compositions, service techniques and protocols, new and existing product designs and specifications, any modifications to such product designs and specifications and other skills, ideas, developed, accumulated, or acquired by the Company,

7. personnel information including the productivity and profitability (or lack thereof) of Company's employees, agents, or independent contractors;

8. any communications between the Company, its officers, directors, shareholders, or employees, and any attorney retained by the Company for any purpose, or any person retained or employed by such attorney for the purpose of assisting such attorney in his or her representation of the Company; and

9. the cost or overhead associated with the goods and services provided by the Company along with the Company's pricing structure for its goods or services, including its margins, discounts, volume purchases, mark-ups, or incentives; and

10. any other matter or thing, whether or not recorded on any medium or kept in the Employee's memory: (a) which the Company derives actual or potential economic value from such matter or thing being not generally known to other persons or entities who might obtain economic value from its disclosure or use, or (b) which gives the Company an opportunity to obtain an advantage over its competitors who do not know or use the same.

B. As used herein, "Trade Secrets" includes certain Confidential Information, and means, as provided in the Uniform Trade Secrets Act (Civil Code § 3426.1(d)), without limitation, information, including a formula, pattern, compilation, program, device, method, technique or process that: (1) Derives independent economic value, actual or potential from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and (2) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

C. Employee acknowledges and agrees that the Company is engaged in the highly competitive business of developing and marketing innovative database technology for mobile software, and has expended, or will expend, significant sums of money and has invested, or will invest, a substantial amount of time to develop and use, and maintain the secrecy of, the Confidential Information and/or Trade Secrets. The Company has thus obtained, or will obtain, a valuable economic asset which has enabled, or will enable, it to develop an extensive reputation and to establish long-term business relationships with its suppliers, customers, and vendors. If such Confidential Information and/or Trade Secrets were disclosed to another person or entity or used for the benefit of anyone other than the Company, the Company would suffer irreparable harm, loss, and damage. Accordingly, Employee acknowledges and agrees that:

1. the Confidential Information and/or Trade Secrets are, and at all times hereafter shall remain, the sole property of the Company;

2. Employee shall use Employee's best efforts and the utmost diligence to guard and protect the Confidential Information and/or Trade Secrets from any unauthorized disclosure to any competitor, supplier, vendor, or customer of the Company or any other person, firm, corporation, or other entity;

3. Unless the Company gives Employee prior express written permission, during Employee's employment and thereafter, Employee shall not use for Employee's own benefit, or use for or disclose to any competitor, supplier, or customer or any other person, firm, corporation, or other entity, the Confidential Information and/or Trade Secrets as set forth herein;

4. Except in the ordinary course of the Company's business, Employee shall not seek or accept any Confidential Information and/or Trade Secrets from any former, present, or future employee of the Company.

5. Upon demand, Employee shall immediately return to the Company, all documentary or tangible Confidential Information and/or Trade Secrets in Employee's possession, custody, or control and shall sign an affidavit under penalty of perjury that Employee has not made or kept any copies, notes, abstracts, summaries, tapes, or other record of any type of Confidential Information and/or Trade Secrets;

6. Upon demand, Employee shall further immediately return to the Company any and all other Company property in Employee's possession, custody, or

control, including, without limitation, any and all keys, security cards, passes, cell phones, laptop computers, PDA's, credit cards, and marketing literature.

7. During Employee's employment, Employee shall not disclose or use for the Company's behalf any trade secrets or confidential information of any former employer, and shall take no effort to reverse engineer or derive independently any information that is or could be a trade secret or confidential information of any former employer. Employee further represents and warrants that Employee has provided to the Company copies of any and all non-disclosure agreements, confidentiality agreements, and/or intellectual property assignment agreements that may bind Employee.

8. Following Employee's termination for any reason, Employee shall not attempt to reconstruct any Trade Secret or Confidential Information of Company.

**3. Customer Non-Solicitation**

After the termination of Employee's employment for any reason, Employee shall not directly or indirectly solicit the actual or potential customers of the Company, as the identities of such actual or potential customers has been compiled over time by the Company and the Company takes reasonable measures to protect such information and considers information regarding its actual or potential customers to be its protected trade secret as that term is defined in the Uniform Trade Secrets Act (Civil Code section 3426.1 *et seq.*).

**4. Employee Non-Solicitation**

After the termination of Employee's employment for any reason, Employee shall not directly or indirectly, or by action in concert with others use unlawful or unethical means to solicit, induce, or influence any person who is engaged by the Company as an employee, agent, independent contractor or otherwise, to terminate any employment or engagement with the Company.



*Employee Initials* *Company Representative*

**5. Intellectual Property Rights and Assignment**

A. As used in this Agreement, the term "Inventions" shall mean and include all procedures, systems, machines, methods, processes, uses, apparatuses, compositions of matter, designs or configurations, computer programs of any kind, discovered, conceived, reduced to practice, developed, made, or produced, or any improvements to them, and shall not be limited to the meaning of "Invention" under the United States patent laws.

B. Employee agrees to disclose promptly to the Company any and all Inventions, whether or not patentable and whether or not reduced to practice, conceived, or developed, by Employee during his/her employment with the Company, either alone or jointly with others, which relate to or result from the actual or anticipated business, work, research, investigations, products, or services of the Company, or which result, to any extent, from use of the Company's premises or property.

C. Employee acknowledges and agrees that the Company is the sole owner of any and all property rights in all such Inventions, including, but not limited to, the right to use, sell, license, or otherwise transfer or exploit the Inventions, and the right to make such changes in them and the uses thereof as the Company may from time to time determine. Employee agrees to disclose in writing and to assign, and Employee hereby assigns, to the Company, without further consideration, Employee's entire right, title, and interest (throughout the United States and in all foreign countries) free and clear of all liens and encumbrances, in and to all such Inventions, which shall be the sole property of the Company, whether or not patentable to the fullest extent possible by the law and pursuant to California Labor Code sections 2870-2872. A copy of California Labor Code sections 2870-2872 is attached hereto as **Exhibit A**.

D. Employee hereby acknowledges and agrees that all writings and other works that may be copyrighted (including computer programs) which are related to the present or planned, or reasonably anticipated business of the Company and are prepared by Employee during his/her employment with the Company shall be, to the extent permitted by law, deemed to be works for hire, with the copyright automatically vesting in the Company. To the extent that such writings and works are not works for hire, Employee hereby waives any and all "moral rights" in such writings and works, and agrees to assign, and hereby does assign, to the Company all of Employee's right, title, and interest, including copyright, in such writings and works.

E. Employee further agrees to reasonably cooperate with the Company, both during and after employment in obtaining and enforcing patents, copyrights, trademarks, and other protections of the Company's rights in and to all such Inventions, writings and other works. Without limiting the generality of the foregoing, Employee shall, at any time during or after employment with the Company, at the Company's request, execute specific assignments in favor of the Company or its nominee of Employee's interest in any of the Inventions, writings, or other works covered by this Agreement, as well as execute all papers, render all assistance, and perform all lawful acts that the Company considers necessary or advisable for the preparation, filing, prosecution, issuance, procurement, maintenance or enforcement of patents, trademarks, copyrights and other protections, and any applications for any of the foregoing, of the United States or any foreign country for any such Inventions, writings, or other works, and for the transfer of any interest Employee may have therein. Employee shall execute any and all papers and documents required to vest title in the Company or its nominee in any such Inventions, writings, other works, patents, trademarks, copyrights, applications, and interests.

F. In the event that Employee is not employed by the Company at the time Employee is requested to perform any act or execute any document, the Company shall pay to Employee fifty dollars ($50.00) for the execution of each such document and one hundred fifty dollars ($150.00) per day for each day or portion thereof spent at the request of the Company in the performance of acts, plus reimbursement for any out-of-pocket expenses incurred by Employee at the Company's request in such performance.

G. Employee represents, warrants, and agrees that Employee has disclosed to the Company all continuing obligations which Employee has with respect to the assignment of Inventions to any previous employers, and Employee claims no previous unpatented Inventions as his/her own, except for those which have been reduced to practice and which are shown on **Exhibit B** attached hereto. Employee acknowledges and agrees that the Company does not seek any confidential information or trade secrets that Employee may have acquired from a previous employer, and Employee will not disclose any such information to the Company.

**6. Remedies**

Employee acknowledges and agrees that the business of the Company is highly competitive, and that violation of any of the covenants provided for in this Agreement would cause immediate, immeasurable, and irreparable harm, loss and damage to the Company not adequately compensable by a monetary award. Accordingly, the Employee agrees, without limiting any of the other remedies or damages available to the Company, that any violation of said covenants, or any of them, may be enjoined or restrained by any court of competent jurisdiction, and that any temporary restraining order or emergency, preliminary or final injunctions may be issued by any court of competent jurisdiction.

**7. Miscellaneous**

A. Employee acknowledges and agrees that this Agreement is not a contract for or guarantee of continued employment or rate of compensation for any period. Employee's employment with the Company is at-will. Either party is free to terminate Employee's employment with the Company at any time, for any reason, with or without notice. The "at-will" nature of the employment relationship can be changed only by express written agreement between the Company and Employee, signed by the Chairman of the Board of the Company.

B. No delay on the part of any party in the exercise of any right or remedy shall operate as a waiver thereof, and no single or partial exercise by any party of any right or remedy shall preclude an additional or further exercise thereof or the exercise of any other right or remedy.

C. This Agreement is being delivered and executed in the State of California, and the validity, construction, and the enforceability of this Agreement shall be governed in all respects by the laws of the State of California, without regard to the principles of comity or conflicts of laws of such state.

D. This Agreement may be executed in any one or more counterparts, each of which shall constitute an original, no other counterpart needing to be produced, and all of which, when taken together, shall constitute but one and the same instrument.

E. It is the desire of the parties that the provisions of this Agreement be enforced to the fullest extent permissible under the laws and public policies in each jurisdiction in which enforcement might be sought. Accordingly, whenever possible, each of the provisions of this Agreement shall be construed and interpreted in such a manner as to be effective and valid under applicable law. If any provision of this Agreement or the application of any provision of this Agreement to any party or circumstance shall be prohibited by, or invalid under applicable law, such provision shall be ineffective only to the extent of such prohibition without invalidating the remainder of such provision, any other provision of this Agreement, or the application of such provision to other parties or circumstances.

F. This agreement constitutes the entire agreement between Employee and the company regarding the subject matter of this Agreement and supersedes all other agreements, whether written, oral, or implied, regarding the subject matter of this Agreement. Nothing in this Agreement shall alter the at-will nature of Employee's employment relationship with Company.

_________ _________

*Employee Initials* *Company Representative*

G. The headings of paragraphs herein are merely for convenience of reference and shall not affect the interpretation of any of the provisions hereof. Whenever the context so requires, the plural shall include the singular and vice versa.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the day and year first above written.

INX, INC.,
a Delaware corporation.

Employee:

Date: ____________

____________________________
Curtis Moore

Company:

Date: ____________

By____________________________
Deborah Simpson
Director of Employee Services

# EXHIBIT B

# * * * EMPLOYMENT * * *

**COMPLAINT OF DISCRIMINATION UNDER THE PROVISIONS OF THE CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT**

**DFEH #** E201011C5270-00
DFEH USE ONLY

CALIFORNIA DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING

YOUR NAME (indicate Mr. or Ms.): **MOORE, CURTIS**
TELEPHONE NUMBER (INCLUDE AREA CODE): **(619)534-0365**

ADDRESS: **5173 WARING RD. #240**

CITY/STATE/ZIP: **SAN DIEGO, CA 92120**
COUNTY: **SAN DIEGO**
COUNTY CODE: **073**

NAMED IS THE EMPLOYER, PERSON, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, OR STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME:

NAME: **INX, INC.**
TELEPHONE NUMBER (Include Area Code): **(469)549-3917**

ADDRESS: **CAMP LEATHERNECK, AFGHANISTAN**
DFEH USE ONLY

CITY/STATE/ZIP: **SAN DIEGO, CA 92120**
COUNTY: **SAN DIEGO**
COUNTY CODE: **073**

NO. OF EMPLOYEES/MEMBERS (if known): **150+**
DATE MOST RECENT OR CONTINUING DISCRIMINATION TOOK PLACE (month,day, and year): **01/31/2011**
RESPONDENT CODE: **00**

THE PARTICULARS ARE:

**I allege that on about or before 01/31/2011, the following conduct occurred:**

___ termination
___ laid off
___ demotion
___ harassment
___ genetic characteristics testing
___ constructive discharge (forced to quit)
___ impermissible non-job-related inquiry
___ denial of employment
___ denial of promotion
___ denial of transfer
___ denial of accommodation
___ failure to prevent discrimination or retaliation
_X_ retaliation
___ other (specify) ______
___ denial of family or medical leave
___ denial of pregnancy leave
___ denieal of equal pay
___ denial of right to wear pants
___ denial of pregnancy accommodation

**by** **INX, INC.**

Name of Person — Job Title (supervisor/manager/personnel director/etc.)

**because of :**

___ sex
___ age
___ religion
___ race/color
___ national origin/ancestry
___ marital status
___ sexual orientation
___ association
___ disability (physical or mental)
___ medical condition (cancer or generic characteristic
___ other (specify) ______
_X_ retaliation for angaging in protected activity or requesting a protected leave or accommodation

**State of what you believe to be the reason(s) for discrimination**

I WAS TERMINATED IN RETALIATION FOR MY COMPLAINTS ABOUT THE HOSTILE WORK ENVIRONMENT CREATED BY THE REGULAR AND OPEN VIEWING OF PORNOGRAPHY IN THE WORKPLACE.

I wish to pursue this matter in court. I hereby request that the Department of Fair Employment and Housing provide a right-to-sue. I understand that if I want a federal notice of right-to-sue, I must visit the U.S. Equal Employment Opportunity Commission (EEOC) to file a complaint within 30 days of receipt of the DFEH "Notice of Case Closure," or within 300 days of the alleged discriminatory act, whichever is earlier.

I have not been coerced into making this request, nor do i make it based on fear of retaliation if I do not do so. I understand it is the Department of Fair Employment and Housing's policy to not process or reopen a complaint once the complaint has been closed on the basis of "Complainant Elected Court Action."

**By submitting this complaint I am declaring under penalty of perjury under the laws of the State of California that the foragoing is true and correct of my own knowledge except as to matters stated on my information and belief, and as to those matters I believe it to be true.**

Dated **04/13/2011**

At **San Diego**

DATE FILED: **04/13/2011**



STATE OF CALIFORNIA - STATE AND CONSUMER SERVICES AGENCY

EDMUND G. BROWN, JR., Governor

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**

Phyllis W Cheng, Director

1277 ALLUVIAL AVENUE, SUITE 100, FRESNO, CA 93720
(559) 244-4760
www.dfeh.ca.gov

April 13, 2011

RE: E201011C5270-00
MOORE/INX, INC.

## NOTICE TO COMPLAINANT'S ATTORNEY

Enclosed is a copy of your client's complaint of discrimination filed with the Department of Fair Employment and Housing (DFEH) pursuant to the California Fair Employment and Housing Act, Government Code section 12900 et seq. Also enclosed is a copy of your client's Notice of Case Closure, which constitutes your client's right-to-sue notice. Pursuant to Government Code section 12962, DFEH will not serve these documents on the employer.

Please refer to the enclosed Notice of Case Closure for information regarding filling a private lawsuit in the State of California.

Sincerely,

Geraldine Reyes

Geraldine Reyes
District Administrator

Enclosure: Complaint of Discrimination
Notice of Case Closure

DFEH-200-06 (01/08)



STATE OF CALIFORNIA - STATE AND CONSUMER SERVICES AGENCY EDMUND G. BROWN, JR., Governor

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING** Phyllis W Cheng, Director

1277 ALLUVIAL AVENUE, SUITE 100, FRESNO, CA 93720
(559) 244-4760
www.dfeh.ca.gov

April 13, 2011

MOORE, CURTIS
5173 WARING RD. #240
SAN DIEGO, CA 92120

RE: E201011C5270-00
MOORE/INX, INC.

Dear MOORE, CURTIS:

## NOTICE OF CASE CLOSURE

This letter informs that the above-referenced complaint that was filed with the Department of Fair Employment and Housing (DFEH) has been closed effective April 13, 2011 because an immediate right-to-sue notice was requested. DFEH will take no further action on the complaint.

This letter is also the Right-To-Sue Notice. According to Government Code section 12965, subdivision (b), a civil action may be brought under the provisions of the Fair Employment and Housing Act against the person, employer, labor organization or employment agency named in the above-referenced complaint. The civil action must be filed within one year from the date of this letter.

If a federal notice of Right-To-Sue is wanted, the U.S. Equal Employment Opportunity Commission (EEOC) must be visited to file a complaint within 30 days of receipt of this DFEH *Notice of Case Closure* or within 300 days of the alleged discriminatory act, whichever is earlier.

DFEH does not retain case files beyond three years after a complaint is filed, unless the case is still open at the end of the three-year period.

Sincerely,

Geraldine Reyes

Geraldine Reyes
District Administrator

cc: Case File

DEBORAH SIMPSON
HUMAN RESOURCES
INX, INC.
1955 LAKEWAY DR. SUITE 220
LEWISVILLE, TX 75057

# EXHIBIT C

EEOC Form 161-B (11/09)

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

# NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

To: **Curtis Moore**
**5173 Waring Road**
**Apt # 240**
**San Diego, CA 92120**

From: **Dallas District Office**
**207 S. Houston St.**
**3rd Floor**
**Dallas, TX 75202**

[ ] *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **450-2011-02819** | **Tammy R. Johnson, Investigator** | **(214) 253-2874** |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

[ ] More than 180 days have passed since the filing of this charge.

[X] Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

[X] The EEOC is terminating its processing of this charge.

[ ] The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

[ ] The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS of your receipt of this Notice.** Otherwise, your right to sue based on the above-numbered charge will be lost.

[ ] The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

**Michael C. Fetzer,**
**Director**

SEP 2 8 2011
*(Date Mailed)*

Enclosures(s)

cc:

**Deborah Trimble**
**Human Resources Director**
**INX, INC.**
**1955 Lakeway Drive, Suite 220**
**Lewisville, TX 75057**

**Michelle Tran, Esq.**
**225 Broadway, Suite 2220**
**San Diego, CA 92101**

Enclosure with EEOC
Form 161-B (11/09)

## INFORMATION RELATED TO FILING SUIT UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law. If you also plan to sue claiming violations of State law, please be aware that time limits and other provisions of State law may be shorter or more limited than those described below.)*

### PRIVATE SUIT RIGHTS – Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days of the date you *receive* this Notice**. Therefore, you should **keep a record of this date**. Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was *mailed* to you** (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

### PRIVATE SUIT RIGHTS -- Equal Pay Act (EPA):

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years) before you file suit** may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit before 7/1/10 – *not* 12/1/10 -- in order to recover unpaid wages due for July 2008. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice and within the 2- or 3-year EPA back pay recovery period.

### ATTORNEY REPRESENTATION -- Title VII, the ADA or GINA:

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do not relieve you of the requirement to bring suit within 90 days.

### ATTORNEY REFERRAL AND EEOC ASSISTANCE -- All Statutes:

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, **please make your review request within 6 months of this Notice**. (Before filing suit, any request should be made within the next 90 days.)

***IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.***

EEOC Form 5 (11/09)

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form.

Charge Presented To: [ ] FEPA [X] EEOC

Agency(ies) Charge No(s): 450-2011-02819

Texas Workforce Commission Civil Rights Division and EEOC

State or local Agency, if any

| Name (indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| Mr. Curtis Moore | (619) 534-0365 | |

Street Address / City, State and ZIP Code

5173 Waring Road, Apt # 240, San Diego, CA 92120

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (*If more than two, list under PARTICULARS below.*)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| INX, INC. | Unknown | (469) 549-3917 |

Street Address / City, State and ZIP Code

1955 Lakeway Drive, Suite # 220, Lewisville, TX 75057

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| | | |

Street Address / City, State and ZIP Code

DISCRIMINATION BASED ON (*Check appropriate box(es).*)

[ ] RACE [ ] COLOR [ ] SEX [ ] RELIGION [ ] NATIONAL ORIGIN

[X] RETALIATION [ ] AGE [ ] DISABILITY [ ] GENETIC INFORMATION

[ ] OTHER (*Specify*)

DATE(S) DISCRIMINATION TOOK PLACE

Earliest: 01-31-2011 Latest: 01-31-2011

[ ] CONTINUING ACTION

THE PARTICULARS ARE (*If additional paper is needed, attach extra sheet(s)*):

**I. PERSONAL HARM:**

On or about January 31, 2011, I was discharged while working in Afghanistan.

**II. RESPONDENT'S REASON FOR ADVERSE ACTION:**

No reason given.

**III. DISCRIMINATION STATEMENT:**

I believe I have been retaliated against for having opposed of unlawful acts made under Title VII in violation of Section 704(a) of Title VII of the Civil Rights Act of 1964, as amended.

RECEIVED 2011 SEP 2 PM 12 39 ... COMMISSION ... OFFICE

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

I declare under penalty of perjury that the above is true and correct.

29 Aug 2011 — [signature]

Date — Charging Party Signature

NOTARY – *When necessary for State and Local Agency Requirements*

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.

SIGNATURE OF COMPLAINANT

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (*month, day, year*)

# EXHIBIT D

**UNITED STATES MARINE CORPS**
MARINE CORPS CIVILIAN HUMAN RESOURCES OFFICE-SOUTHWEST
EEO OFFICE. BOX 555026 BLDG: 2265
CAMP PENDLETON, CALIFORNIA 92055-5026

12713
EEO
6 Oct 2011

**CERTIFIED MAIL**

From: EEO Counselor, Marine Corps Base Camp Pendleton
To: Mr. Curtis W. Moore, 5173 Waring Road #240, San Diego, California 92120
C/O Law Offices of Kyle Yaege, A.P.C., 225 Broadway, Suite 2220, San Diego, California, 92101-3452

Subj: NOTICE OF RIGHT TO FILE A DISCRIMINATION COMPLAINT
(LOCAL DOCKET # 11-00681-04191)

Encl: (1) Formal Complaint Form

1. You initially contacted the U.S. Marine Corps EEO Office on 2 September 2011, and alleged that you were discriminated against because of Reprisal (for reporting a hostile work environment) when on 31 January 2011 you were terminated from your contractor position as a SharePoint Developer for INX, Inc., while at Camp Leatherneck in Afghanistan.

2. Based on all the information I have been provided as of 3 October 2011, when the complaint was assigned to Marine Corps Base Camp Pendleton and since I have not been able to resolve, your claims/issues you are now entitled to file a discrimination complaint based on reprisal.

3. If you file a complaint, it must be in writing, signed, and filed, in person or by mail within ***15 calendar days after receipt of this notice***, with the following official authorized to receive discrimination complaints.

Commanding General
Attn: Regional EEO Office
Marine Corps Installations West
Box 555200, Bldg: 1160, Room 284
Camp Pendleton, CA 92055-5200

4. A Formal Complaint of Discrimination Form is provided for your use. If you have any amendments that you would like to include with your complaint, you must submit these amendments in writing to the EEO Office.

Subj: NOTICE OF RIGHT TO FILE A DISCRIMINATION COMPLAINT
(LOCAL DOCKET # 11-00681-04191)

5. The EEO Office, where the complaint arose, must process your discrimination complaint. To expedite your complaint, you are urged to file directly with the EEO Office where the complaint arose, since the complaint will be referred back to that office for processing.

6. The issues in the formal complaint, which were discussed with the EEO Office, and the matter giving rise to the complaint, must be sufficiently precise to identify you and the Activity and to describe the actions(s)or practice(s) that form the basis of the complaint. Failure to provide this information may result in the dismissal of your complaint for failure to state a claim.

7. The complaint must also state whether you have filed a grievance under a negotiated grievance procedure or an appeal to the Merit Systems Protection Board on the same subject matter, including the dates on which a grievance or an appeal was filed. This information is necessary for the Department of the Navy to determine whether your complaint is appropriate for processing under 29 C.F.R. § 1614.

8. If you retain an attorney or any other person to represent you, you or your representative must immediately notify the EEO Office, in writing. You will receive a written notice of receipt of your discrimination complaint from the appropriate agency official.

DAN GRISSOM

Copy to:
File

Certified Mail #: 7010 1870 0003 1832 2935



**UNITED STATES MARINE CORPS**
FIRST MARINE EXPENDITIONARY FORCE
CAMP PENDLETON, CALIFORNIA 92055

12713
MCI-W/EEO
18 Nov 11

**CERTIFIED MAIL**

From: Commanding General, First Marine Expeditionary Force, Camp Pendleton, California
To: Curtis W. Moore, c/o Kyle E. Yaege, Esq., 4542 Ruffner Street, #150, San Diego, California 92111

Subj: NOTICE OF DISMISSAL OF FORMAL COMPLAINT OF CURTIS W. MOORE V. RAYMOND E. MABUS, SECRETARY OF THE NAVY, AGENCY DON DOCKET NO. DON (MC) 11-00681-04191

Ref: (a) Your formal discrimination complaint dated 7 Oct 11
(b) Notice of Receipt of Discrimination Complaint dated 24 Oct 11
(c) 29 C.F.R. § 1614

Encl: (1) EEO Counselor's Report of 2 Nov 11
(2) Notice of Appeal/Petition (EEOC Form 573)

1. Reference (a), dated 7 October 2011, was received at the MCI-W, Regional EEO Office, Camp Pendleton, California on 20 October 2011 and acknowledged by reference (b). .

2. Based upon my review of reference (a) and enclosures (1) and (2), and in accordance with reference (c), I am hereby dismissing your discrimination complaint for the following reason:

You allege as an employee of INX, Inc. and contact employee of First Marine Expeditionary Force, Camp Pendleton, California, you were discriminated against because of reprisal (reporting pornographic material(s)) when on 31 January 2011, your employer INX, Inc. terminated your employment with them.

**PROCESSING COMPLAINTS FROM CONTRACT WORKERS**

29 C.F.R. § 1614.107(a)(1) allows an agency to dismiss any formal complaint filed by a contract or contingent worker can be properly dismissed for failure to state a claim under 29 C.F.R. § 1614.107(a)(1) only after a determination has been made that the individual is not an "employee" under the federal anti-discrimination statutes. Therefore the Agency conducted an analysis based on *Ma v Department of Health and Human Services*, EEOC Appeal No. 01962390 (June 1, 1998).

**DETERMINATION OF EMPLOYEE STATUS UNDER TITLE VI**:

In *Ma v Department of Health and Human Services*, EEOC Appeal No. 01962390 (June

Subj: NOTICE OF DISMISSAL OF FORMAL COMPLAINT OF CURTIS W. MOORE V. RAYMOND E. MABUS, SECRETARY OF THE NAVY, AGENCY DOCKET NO. DON (MC) 11-00681-04191

1, 1998), EEOC applied the factors listed below to determine whether the Complainant was an Agency employee covered by Title VII. These factors are set forth in the Commission's Compliance Manual, Section 2: Threshold Issues, 2-III.A.1, pages 2-25 and 2-26 (May 12, 2000). The following may be used as guidance to determine if an individual meets the requirement of an "employee"; however, the list is non-exhaustive and "all of the incidents of the relationship must be assessed and weighed with no one factor being decisive." *Darden*, 520 U.S. at 324.

(1) the employer has the right to control when, where and how the worker performs the job;

(2) the work does not require a high level of skill or expertise;

(3) the employer furnishes the tools, materials, and equipment;

(4) the work is performed on the employer's premises;

(5) there is a continuing relationship between the worker and the employer;

(6) the employer has the right to assign additional projects to the worker;

(7) the employer sets the hours of work and the duration of the job;

(8) the worker is paid by the hour, week, or month rather than the agreed cost of performing a particular job;

9) the worker does not hire and pay assistants;

(10) the work performed by the worker is part of the regular business of the employer;

(11) the employer is in business;

(12) the worker is not engaged in his/her own distinct occupation or business; compensation;

14) the worker is considered an employee of the employer for tax purposes (i.e., the employer withholds federal, state, and Social Security taxes);

(15) the employer can discharge the worker;

16) the worker and the employer believe that they are creating an employer-employee relationship.

Subj: NOTICE OF DISMISSAL OF FORMAL COMPLAINT OF CURTIS W. MOORE V. RAYMOND E. MABUS, SECRETARY OF THE NAVY, AGENCY DOCKET NO. DON (MC) 11-00681-04191

**The Following are Case Law that Supports the Agency Dismissal**

- In *Spirides v Reinhardt*, the D.C. Circuit ruled that the determination of whether an individual is an employee or an independent contractor for purposes of Title VII should involve ....analysis of the "economic realities" of the work relationship.....Nevertheless, the extent of the employer's right to control the "means and manner" of the worker's performance is the most important factor to review here...If an employer has the right to control and direct the work of an individual, not only as to the result to be achieved, but also as to the details by which that result is achieved, an employer/employee relationship is likely to exist...."

- In *Johnson v Department of the Navy*, EEOC Appeal No. 0120064243 (September 13, 2007): the Complainant was hired by Lion-Vallen Industries (LVI) and under government contract as a Store Worker. The Agency dismissed the complaint for failure to state a claim pursuant to 29 C.F.R. § 1614.107(a)(1) stating the Complainant was not an employee of the Agency nor did the Complainant meet the criteria for a common law employee. Upon review, EEOC found that the record supports the Agency's determination that the Complainant was not an employee of the Agency at the time of the alleged discrimination. The Complainant did not dispute that she was hired by LVI to perform under government contract. In fact, in her FEPA complaint, the Complainant indicated that she was an employee of LVI. Record showed the Complainant was trained by LVI employees and the Agency provided no skills training for the Complainant. The Complainant signed timesheets created by LVI and LVI contract employees verified the actual hours worked. The Complainant's salary was also paid by LVI and LVI terminated the Complainant. When weighing all the factors together, EEOC stated the Agency showed that LVI maintained responsibility over hiring, training, paying, and terminating their employees. Therefore, the Complainant was not an employee of the Agency and the matter was properly dismissed pursuant to 29 C.F.R. § 1614.107(a)(1) for failure to state a claim.

- In *Price v Department of Justice (U.S. Marshals Service)* EEOC Appeal No. 0120061770, (February 8, 2007): The EEOC found the Agency correctly determined that the Complainant was neither an Agency employee, nor an applicant for employment for purposes of the laws enforced by the Commission, including Title VII of the Civil Rights Act of 1964 (Title VII), as amended, 42 U.S.C. § 2000e et seq. and Section 501 of the Rehabilitation Act of 1973 (Rehabilitation Act), as amended, 29 U.S.C. § 791 et seq. In the instant case, the Agency and a Contractor (CA1) developed a Project/Task Support Task Order in which CA1 agreed to provide the Agency three individuals "to perform administrative duties," for forty hours per week at the cost of labor hours with no opportunity for overtime, through to September 30, 2007. Guidelines, in the record, indicated that CA1's responsibilities included "salaries, benefits (insurance, vacation); training (unless task related specialized training is not available from contractor's sources); EEO guidance; counseling, behavior/performance problems; other training/guidance/ assistance required by [the] employee ... [and] supervision." In addition, CA1 was responsible for communicating an employee's absence to the Agency and inquiring whether it required a replacement for the absence period. The Agency was responsible for providing the work location with standard office space and equipment. EEOC found that the Task Order did not provide the

Subj: NOTICE OF DISMISSAL OF FORMAL COMPLAINT OF CURTIS W. MOORE V. RAYMOND E. MABUS, SECRETARY OF THE NAVY, AGENCY DOCKET NO. DON (MC) 11-00681-04191

benefits and circumstances normally afforded with Agency employment, joint or otherwise. Accordingly, EEOC affirmed the Agency's dismissal of the complaint pursuant to 29 C.F.R. § 1614.107(a)(1) for failure to state a claim.

- In *Darrel Clark v. Potter, Postmaster General, U.S. Postal Service*, EEOC-OFO, Agency No. 1K-211-0145-98, EEOC Appeal No. 01A11615, (January 4, 2002): the Commission determined Complainant was not an agency employee and that the complaint was properly dismissed for failure to state a claim. In its review, the Commission determined that Complainant signed a "Contract Employee Agreement" with a private contractor to fulfill an order with the agency. The Commission looked to this contract since Complainant was only at the agency for two days prior to the alleged discriminatory event. The Commission noted that the contract was very dispositive of the conclusion that Complainant knew he was not an employee of the agency since the contract forbade complainant from accepting employment with the Agency for a specified period. In addition, the Commission noted that the computer work performed was highly technical and was not the main business of the Agency. Accordingly, the Commission affirmed the agency dismissal of the claim on a finding that Complainant was not was not employed by the agency at the time of the alleged discriminatory event.

**Agency Decision**: Based on the information gathered in the Counselor's Report and supporting documentation, I am dismissing your formal complaint for failure to state claim per 29 C.F.R. § 1614.107(a)(1).

3. As you are not a prevailing party, no attorney fees are awarded in connection with your discrimination complaint.

4. This is the final Department of Navy decision on your complaint. If you are dissatisfied with the decision to dismiss your complaint, you may file a notice of appeal with the Equal Employment Opportunity Commission ("the Commission") within thirty (30) calendar days of your receipt of this decision. Enclosure (3) should be used when filing your appeal. The appeal form should be submitted to:

U. S. Equal Employment Opportunity Commission
Office of Federal Operations
P. O. Box 77960
Washington, D.C. 20013

5. At the same time that you file your appeal with the Commission, you MUST provide a copy of the appeal and all supporting statements to the address below within 30 calendar days of filing the Notice of Appeal, enclosure (3).

Commanding General
Attn: Regional EEO Office
Marine Corps Installations-West
Box 555200 Bldg: 1160 Rm: 284

Subj: NOTICE OF DISMISSAL OF FORMAL COMPLAINT OF CURTIS W. MOORE V. RAYMOND E. MABUS, SECRETARY OF THE NAVY, AGENCY DOCKET NO. DON (MC) 11-00681-04191

Camp Pendleton, California 92055-5200

6. An appeal shall be deemed filed on the day it is postmarked, or, in the absence of a postmark, on the date it is received by the Commission. The 30 calendar-day time limit within which an appeal must be filed will not normally be extended by the Commission. If the appeal is not submitted within the time limit, the Commission may extend the time limit if a written explanation showing that you were not notified of the prescribed time limit, were not otherwise aware of it, or circumstances beyond your control prevented you from filing the Notice of Appeal within the prescribed time limit. A copy of your explanation must be forwarded to the EEO Office.

7. If you elect not to appeal to the Commission, you may file a civil action in an appropriate U. S. District Court within 90 calendar days of your receipt of this decision. Filing a civil action will result in termination of the administrative processing of your complaint.

8. If you file a civil action under Title VII of the Civil Rights Act of 1964, as amended, or the Rehabilitation Act of 1973, as amended, and do not have, or are unable to obtain the services of a lawyer, you may request the court to appoint a lawyer to represent you. In such circumstances as the court may deem just, the court may appoint a lawyer and may authorize the commencement of the action without the payment of fees, costs, or security. Any such request must be made

within the above-referenced 90 calendar day time limit, for filing suit and in such form and manner as the court may require. Filing a request for an attorney does not extend your time in which to file a civil action. Both the request and the civil action must be filed within 90 calendar days from the date you receive this decision.

8. If you file an appeal with the Commission, you may still file a civil action in U. S. District Court within thirty (30) calendar days of your receipt of the Commission's final decision on your appeal. A civil action may also be filed any time after 180 calendar days from the date of filing your appeal to the Commission, if a final decision has not been issued by the Commission's Office of Federal Operations.

9. You are further notified that if you file a civil action, you must name Raymond E. Mabus, Secretary of the Navy, Acting, as the defendant. You must include the name of the person and the official title. Failure to name the current, Secretary of the Navy, may result in loss of potential entitlement to judicial redress.

MADHU PANCHADSARAM
By direction

Copy to:
Complainant
WACO
File